IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL J. BURRELLI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:16cv252 |
| | ) | Electronic Filing |
| | ) | |
| **MARK JULIAN, JOSHUA KWOLEK,** | ) | |
| **MICHAEL MROZEK, UNION** | ) | |
| **TOWNSHIP POLICE DEPARTMENT,** | ) | |
| **LUANNE PARKONEN, JOSHUA** | ) | |
| **LAMANCUSA, and JOSEPH** | ) | |
| **VASCETTI,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I.  **Introduction**

Presently before the Court are Motions to Dismiss filed by Defendants Joshua Lamancusa ("Lamancusa") and Luanne Parkonen ("Parkonen") (Doc. No. 5), and Defendant Joseph Vascetti ("Vascetti") (Doc. No. 12). Also before the Court is a Motion for Summary Judgment filed by Plaintiff Michael J. Burrelli ("Plaintiff") (Doc. No. 21). In his Complaint, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights with respect to four vehicles that he claims were stolen from him. (Doc. No. 1-2). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

II.  **Factual Background**

Between June 2010 and August 2013, Plaintiff purchased four vehicles: a 1998 Pontiac Firebird, a 1997 Cadillac Seville, a 1998 Chevy Cavalier, and a 2001 Chrysler 300M. (Doc. No. 1-2 at ¶¶ 11-17). On August 23, 2013, Plaintiff was arrested and incarcerated at the Lawrence County Jail. (Id. at ¶ 18). During his incarceration, each of Plaintiff's vehicles was towed to the facility of an individual named Derek Bloom with Plaintiff's express authorization. (Id. at ¶¶ 19-21).

On December 10 and 11, 2013, Bloom apparently sold the 1998 Cavalier and the 2001 Chrysler to a wrecking facility without Plaintiff's permission. (Id. at ¶ 22). On January 31, 2014, Plaintiff learned that his other two cars were also missing from Bloom's lot. (Id. at ¶ 24). Neither Plaintiff nor his fiancé, Ashley Vereb, authorized the sale or removal of any of the four vehicles. (Id. at ¶¶ 24-26).

On February 1, 2014, Plaintiff sent a letter to Defendant Mark Julian ("Julian") of the Union Township Police Department to report the four vehicles stolen. (Id. at ¶ 25). After receiving no response to his letter, Plaintiff unsuccessfully attempted to telephone the Union Township Police Department nine separate times on the morning of February 14, 2014. (Id. at ¶ 27). Plaintiff mailed a second letter to the Union Township Police Department on February 17, 2014. (Id. at ¶ 29). None of his attempts to contact the police produced any response. (Id. at ¶ 30).

In March 2014, Plaintiff sent a private Criminal Complaint to the Lawrence County District Attorney's Office. (Id. at ¶ 30). The Complaint was returned because no defendant was named therein. (Id. at ¶ 31). Plaintiff responded with a letter explaining that he did not know who had stolen the vehicles and had been unable to engage the Union Township Police Department to assist with the investigation of his claims. (Id. at ¶ 32).

On July 16, 2014, Plaintiff sent a letter to the Pennsylvania State Police informing them of the stolen vehicles. (Id. at ¶34). The State Police advised him that the matter was within the jurisdiction of the Union Township Police Department and that they would forward his letter to that entity for review. (Id. at ¶ 35). Plaintiff placed subsequent calls to the Union Township Police Department on several occasions but his calls were refused. (Id. at ¶¶ 36-37).

In September of 2014, Plaintiff sent a second private Criminal Complaint to the Lawrence County District Attorney's Office, this time identifying an individual named Shawna Sholtis as the defendant. (Id. at ¶ 38). That Complaint was denied and returned. (Id. at ¶ 39). A third Criminal Complaint sent in May, 2015, received no response. (Id. at ¶¶ 97-98).

On October 31, 2014, Plaintiff filed a civil action against Julian and several unnamed members of the Union Township Police Department alleging that they had refused to allow him to report his vehicles as stolen. (Id. at ¶ 45). At some point thereafter, Plaintiff received an incident report written by Defendant Joshua Kwolek ("Kwolek"). (Doc. No. 1-2 Ex. V). In the incident report, Kwolek states that he received Plaintiff's letter and spoke with Vascetti and was advised that the missing cars were a civil matter and had nothing to do with the police. (Id.). Kwolek also spoke with Parkenon and was again advised that the missing cars were a civil matter that could not be handled by the Union Township Police Department. (Id.). Kwolek interviewed Vereb and Bloom and was told that Vereb had been storing the vehicles at Bloom's warehouse but had failed to pay storage fees. (Id.). Consequently, Vereb advised Bloom to take two of the vehicles to the scrap yard. (Id.). Neither Vereb nor Bloom could explain to Kwolek what had happened to the other two vehicles. (Id.).

On December 5, 2014, Kwolek and Defendant Michael Mrozek ("Mrozek") visited Plaintiff in jail and spoke with him about the stolen vehicles. (Doc. No. 1-2 at ¶ 63). Kwolek

3

advised Plaintiff that the missing vehicles were a civil matter to be resolved between Plaintiff, Vereb, and Bloom. (Id. at ¶ 67). During subsequent meetings, Plaintiff continued to insist that the vehicles be reported as stolen and was repeatedly advised that it was a civil matter. (Id. at ¶¶ 71-74, 76).

On February 12, 2015, Kwolek spoke with Lamancusa and was advised that no charges would be filed. (Id. at ¶ 77). Ultimately, no criminal proceedings were ever initiated for any of the four vehicles. Plaintiff claims that Lamancusa and Parkenon refused to file appropriate criminal charges and used their influence as the Lawrence County District Attorney and Assistant District Attorney to prevent the Union Township Police Department from conducting a proper investigation into his claims. (Id. at ¶¶ 110-111). He contends that Vascetti should never have been involved in the investigation and that he should not have advised the Union Township Police Department that the missing cars were a civil matter. (Id. at ¶ 112). Plaintiff generally alleges that his claims were never investigated because of his status as an incarcerated inmate. (Id. at ¶ 115).

### III. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57) (internal citation omitted).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the Fowler court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In

5

> other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. *This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."* Id.

Fowler, 578 F.3d at 210-11 (emphasis added).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir. 1999)). See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See, e.g., Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

IV. **Analysis**

6

In his Complaint, Plaintiff generally alleges that each of the Defendants violated his rights to equal protection and due process as secured by the Fifth and Fourteenth Amendments to the United States Constitution. (Doc. No. 1-2 at ¶¶ 122-128).[1] He also alleges that the Defendants conspired together to interfere with his federal constitutional rights. (Id. at ¶¶ 115-118).

With respect to Lamancusa and Parkonen, Plaintiff specifically alleges that they used their influence and power as District Attorneys to prevent the Union Township Police Department from conducting a proper investigation into his stolen vehicles. According to Plaintiff, Lamancusa and Parkonen discriminated against him because they believed "the Plaintiff should not have any rights to his property" because of his status as an inmate. (Id. at ¶ 102).

Regarding Trooper Vascetti, Plaintiff contends that Vascetti improperly and inaccurately advised Kwolek that the missing vehicles were a "civil matter" rather than a police matter. He claims that Vascetti "knows nothing" about how to investigate stolen vehicles and should not have been involved in the investigation (or, alternatively, should have reported the vehicles as stolen immediately). (Id. at ¶ 112).

In Sanders v. Downs, 420 F. App'x 175 (3d Cir. 2011), the Third Circuit considered and rejected nearly identical claims to those presented in the instant case. In Sanders, the plaintiff alleged that thousands of dollars of personal property had been stolen from his home by a houseguest while he was incarcerated. Id. at 178. Sanders made several attempts to obtain

---

[1] Plaintiff's complaint also contains conclusory language asserting that the Defendants committed "gross negligence" and acted with "deliberate indifference." (Doc. No. 1-2 at ¶¶ 122-128). However, in his brief in response to the Motion to Dismiss filed by Lamancusa and Parkonen, Plaintiff clarified that he is only asserting federal claims based on due process and equal protection rather than state tort claims. (Doc. No. 16 at 3).

assistance from the police, prosecutors, and the courts, but he was repeatedly ignored or rebuffed. Id. He responded by initiating a federal civil rights action alleging violations of his due process and equal protection rights. Id. at 180. The Third Circuit squarely rejected each of his claims:

> The District Court also properly dismissed Sanders' claims that officials violated his right to due process by failing to properly respond to the reports of alleged thefts from his home. As to Sanders' claim against the Pennsylvania State Police and the Bradford County police officers, the District Court correctly reasoned that there is no constitutional right to the investigation or prosecution of another. See Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (observing that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")). Sanders' claims against prosecutors in Bradford and Sullivan Counties necessarily fail because prosecutors enjoy absolute immunity for the failure to adequately investigate a case and for the decision to initiate, or decline to initiate, a prosecution. See Kulwicki v. Dawson, 969 F.2d 1454, 1463–64 (3d Cir. 1992).
>
> Relatedly, Sanders asserted throughout his amended complaint that the police and prosecutors' failure to respond to his complaints violated his right to equal protection under the Fourteenth Amendment. The District Court reasoned that Sanders' equal protection argument failed for the same reason as his due process argument: there is no constitutional right to a criminal investigation or a prosecution. However, an equal protection analysis concerns whether government actors discriminated against an individual for an impermissible reason, such as race, religion, or some other unjustifiable classification. See Price v. Cohen, 715 F.2d 87, 91–92 (3d Cir.1983). An appropriate reason for dismissing Sanders' equal protection claim, then, is that he failed to allege that he was discriminated against on an impermissible basis. To the extent that Sanders alleged that he was discriminated against based on his status as a felon, he did not allege that felons, as a class, receive disparate treatment; nor did he allege that non-felons receive more help.

Id.

Sanders is directly on point. Plaintiff's constitutional claims against Vascetti must fail because "there is no constitutional right to the investigation or prosecution of another." Id. (citing Mitchell, 487 F.3d at 378). His claims against Lamancusa and Parkonen fail because

8

"prosecutors enjoy absolute immunity for the failure to adequately investigate a case and for the decision to initiate, or decline to initiate, a prosecution." Id. (citing Kulwicki, 969 F.2d at 1463–64). To the extent that he accuses Vascetti, Lamancusa, and Parkonen of interfering with the investigation because of discriminatory animus, he has failed to allege that felons, as a class, receive disparate treatment, or that non-felons receive more help. Id. In the absence of the deprivation of any constitutional right, Plaintiff's due process and equal protection claims are each subject to dismissal.

Plaintiff's conspiracy claim is similarly deficient. To state a claim for conspiracy under Section 1983, he must establish: "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Villarose v. North Coventry Twp., 2016 WL 4062731, at *9 (E.D. Pa. Jul. 28, 2016) (citing Rosembert v. Borough of E. Landsdowne, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014)). As noted above, Plaintiff has failed to plead facts supporting the existence of any underlying civil rights violations. See id. at *10 ("If a plaintiff cannot show an underlying [constitutional] violation, her conspiracy claims cannot be maintained."). In addition, Plaintiff has failed to plead any facts to establish the existence of an unlawful agreement between the Defendants. See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (holding that "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred") (quoting D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992)). These defects are each fatal to his conspiracy claim. See Tindell v. Beard, 351 F. App'x 591, 594 (3d Cir. 2009) ("[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a conspiracy claim.").

V.   **Conclusion**

In light of the foregoing, the Motions to Dismiss filed by Lamancusa and Parkonen (Doc. No. 5) and Vascetti (Doc. No. 12) will each be granted.[2]  Moreover, given the nature of the pleadings, the Court finds that they are incapable of being cured by amendment.  See Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004); Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).  Defendants Lamancusa, Parkonen and Vascetti will be dismissed from this action.  Appropriate orders will follow.

Date: February 15, 2017

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Michael J. Burrelli
       MD 5125
       SCI Greene
       175 Progress Drive
       Waynesburg, PA 15370

       (*Via First Class Mail*)

       Jason A. Medure, Esquire
       Marie Milie Jones, Esquire
       Jeffrey Cohen, Esquire
       Timothy Mazzocca, Esquire

       (*Via CM/ECF Electronic Mail*)

---

[2] Plaintiff has also filed a Motion for Summary Judgment against Defendants Julian, Kwolek, Mrozek, and the Union Township Police Department. (Doc. No. 21).  Plaintiff's motion appears to be based entirely on a misreading of the responses contained in Defendants' Answer.  His motion is also premature given that no discovery has taken place in this case.  See Lee v. Sunrise Sr. Living, Inc., 455 F. App'x 199, 202 (3d Cir. 2011) (affirming district court's denial of summary judgment motion because discovery had not yet been completed); Dean v. City of Erie Police Department, 2016 WL 946598, at *4 (W.D. Pa. Mar. 14, 2016) (denying a motion for summary judgment filed prior to discovery because the motion was "premature in that no evidence has been offered in [the] case").  As such, Plaintiff's motion will be denied without prejudice to renewal at a later stage in the litigation.